**REID & REID, INC.**

v.

**UNITED STATES of America.**

No. CCB–03–2697.

United States District Court, D. Maryland.

Jan. 4, 2005.

Matthew Arthur Weir, Semmes Bowen and Semmes PC, Daniel S. Katz, Tydings and Rosenberg LLP, Baltimore, MD, for Reid & Reid, Inc.

Dashiell C. Shapiro, United States Department of Justice Tax Division, Washington, DC, for United States of America.

### ORDER

BLAKE, District Judge.

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the defendant's Motion for Summary Judgment (docket no. 12) is **GRANTED**;

2. judgment is entered in favor of the defendant, except as to those aspects of the complaint where the court lacks subject matter jurisdiction, which are dismissed; and

3. the clerk shall **CLOSE** this case.

### MEMORANDUM

Reid & Reid, Inc. ("Reid"), a Maryland company, filed its complaint to appeal and contest the Notice of Determination Under Section 6330 of the Internal Revenue Code issued by the Internal Revenue Service ("IRS") with respect to certain payroll taxes owed by Reid. Specifically, Reid alleges that the IRS failed to satisfy the procedural requirements of the Collection Due Process ("CDP") hearing that took place on July 30, 2003 and that this failure amounts to an abuse of discretion. Reid seeks a remand to require the IRS to provide a hearing in full compliance with 26 U.S.C. § 6330. The IRS denies abusing its discretion at the CDP hearing and has moved for summary judgment. In addition, the IRS argues that this court lacks subject matter jurisdiction over Reid's claim with regard to corporate income taxes and Reid's appeal of the Notice of Federal Tax Lien.

Having reviewed the parties' briefs, I have concluded that this court has subject matter jurisdiction over the payroll taxes at issue in the complaint and over the IRS's decision following the CDP hearing with respect to the Notice of Intent to Levy, although the court lacks subject matter jurisdiction over Reid's claims to the extent they involve corporate income taxes and the federal tax lien. In addition, I have concluded that the IRS did not abuse its discretion by denying Reid's request for an alternative collection agreement. Accordingly, I will grant the IRS's motion for summary judgment.

### BACKGROUND

On January 7, 2003, Reid received a Notice of intent to Levy from the IRS (Def.'s Ex. 101) and on January 13, 2003, Reid received a Notice of Federal Tax Lien. (Def.'s Ex. 102). On January 15, 2003, Reid mailed the IRS a request for a CDP hearing concerning the Notice of Intent to Levy, but Reid did not request a hearing with respect to the Federal Tax Lien at that time. (Def.'s Ex. 103). Settlement Officer Kathryn Dugan was assigned to conduct a hearing regarding Reid's request. At the hearing, which was held on July 30, 2003 at the Baltimore Appeals Office, Reid requested an alternative collection agreement to pay its tax liability over a period of time. (Reid Aff. ¶ 5). At the conclusion of the hearing. Officer Dugan granted Reid additional time to supplement the proposal with missing financial information. (Reid Aff. ¶¶ 7–8). After the hearing however, while Officer Dugan was considering Reid's request, she discovered that Reid was not in compliance with filing or deposit requirements for the second quarter, for taxes due on July 31, 2003, (Dugan Decl. ¶¶ 12–15). The IRS contends that installment agreements cannot be accepted for parties that are not meeting their deposit and filing requirements. Consequently, Officer Dugan rejected Reid's installment proposal. In addition, on July 30, 2003, Reid orally

requested a separate hearing regarding the federal tax lien. This request was denied because the IRS claims the request was not made within the statutory time period provided by 26 U.S.C. § 6320(a)(3)(b).

Reid contends that when the meeting on July 30 concluded, all parties agreed that the hearing would be continued at a later date, after the IRS received the additional information it requested. (Reid Aff. ¶ 8). On August 8, 2003, Reid provided Officer Dugan with that information. Reid alleges it repeatedly attempted to contact Officer Dugan after the hearing but she did not respond. (Reid Aff. ¶¶ 10–11). On August 22, 2003, the IRS sent Reid its Decision Letter rejecting Reid's request for a collection agreement. (Dugan Decl. ¶ 15–16; Def.'s Exs. 106–107). Reid is not challenging the underlying tax liability, but does seek further consideration of alternative collection plans.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir.2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

■ Decisions following CDP hearings under 26 U.S.C. § 6330 are reviewed under an abuse of discretion standard. *See Dudley's Commercial and Industrial Coating, Inc. v. United States Internal Revenue Service*, 292 F.Supp.2d 976, 985 (M.D.Tenn.2003); *Bartolomeo v. United States*, 292 F.Supp.2d 728, 732 (W.D.Pa. 2003); *MRCA Information Services v. United States* 145 F.Supp.2d 194, 199 (D.Conn.2000). "An abuse of discretion is an arbitrary action not justifiable in light of the facts and circumstances presented in the record." *Dudley's Commercial and Industrial Coating* 292 F.Supp.2d at 985 (citations omitted). Although this stan-

dard is not explicitly set forth in the statute, the legislative history states:

> Where the validity of the tax liability is not properly part of the appeal, the tax payer may challenge the determination of the appeals officer for an abuse of discretion. In such cases, the appeals officer's determination as to the appropriateness of the collection activity will be reviewed using an abuse of discretion standard of review.

*Id.* (quoting H.Rep. No. 105–599 at 266 (1998)). The history indicates that Congress intended courts to apply an abuse of discretion standard, and neither party argues otherwise.

## I. Subject Matter Jurisdiction

■ The IRS contends this court lacks subject matter jurisdiction to review Reid's CDP hearing to the extent it involves corporate income taxes. United States District Courts only have subject matter jurisdiction to review CDP hearings under 26 U.S.C. § 6330 if the subject of the hearing is not within the jurisdiction of the United States Tax Court. 26 U.S.C. § 6330(d)(1)(B). Because the United States Tax Court has jurisdiction over income taxes, this court does not. *See White v. United States* 250 F.Supp.2d 919, 922 (M.D.Tenn.2003). Reid's complaint, however, states "this case only involves payroll taxes," and it appears only $179.55 of the $145,362.80 owed by Reid stems from corporate income tax liability. (Pl.'s Exhibit A). The remaining amount encompasses form 940 and 941 taxes, which cover Federal Unemployment Tax Act taxes, an excise tax paid by the employer, and a trust fund tax, over which this court possesses subject matter jurisdiction. (Pl.'s Exhibit A). *See Moore v. Commissioner of Internal Revenue* [CCH Dec. 53,802], 114 T.C. 171, 175, 2000 WL 283865 (2000). *Chatterji v. Commissioner of Internal Revenue* [CCH Dec. 30,205], 54 T.C. 1402, 1405, 1970 WL 2361 (1970); *Living Care Alternatives of Utica, Inc. v. United States* 312 F.Supp.2d 929, 933 (S.D.Ohio 2004).

■ The IRS also argues this court lacks subject matter jurisdiction to review Officer Dugan's decision with respect to the federal tax lien. Under 26 U.S.C. § 6320(a)(3)(B), a party has 30 days to request a CDP hearing after the receipt of a Notice of Federal Tax Lien. Reid received a Notice of Federal Tax Lien on January 13, 2003, and did not formally request. a hearing regarding the tax lien until July 30, 2003, more than six months later. If a hearing is requested by a party after the expiration of the 30 day statutory period and the IRS provides a hearing, the hearing is considered an equivalent hearing, rather than a statutory CDP hearing. *Living Care Alternatives of Utica, Inc.* 312 F.Supp.2d at 932. This difference is significant because, unlike CDP hearings, equivalent hearing decisions are not reviewable in United States District Courts. *Id.*

Reid claims that even though it did not formally request a hearing regarding the lien within 30 days, the IRS should have anticipated that when Reid requested a CDP hearing regarding the Notice of Intent to Levy on January 15, 2003, this hearing request encompassed both the Lien and Levy, because both notices were received within a week of each other and both pertained to the same tax liability owed by Reid. (Pl.'s Mem. Opp'n Summ. J at 7–8). In support of its argument. Reid cites to a Congressional Report concerning the IRS Restructuring and Reform Act of 1998, which stated

> [t]he conferees anticipate that the IRS will combine Notice of Intent to Levy and Notice of Lien hearings whenever possible.... If the taxpayer requests a hearing following receipt of a Notice of

Lien or Notice of Intent to Levy and, prior to the date of the hearing, receives the other notice, the scheduled hearing will serve both purposes and the taxpayer is obligated to raise all relevant issues at such a hearing.

H.R. Conf. Rep. No. 105–599, at 266 (1998). In addition, 26 U.S.C. § 6320(b)(4) states "[t]o the extent practicable, a hearing under this section shall be held in conjunction with a hearing under section 6330."

Though Reid did not formally request a hearing regarding the lien within the time required by statute, the IRS should have anticipated that when Reid requested a hearing concerning the levy, it would also be challenging the lien, because the lien and levy are so closely related and the notice for each arrived within a week of the other. The record, however, indicates that rather than raise any issue regarding the lien at the hearing on July 30, Reid merely requested an additional CDP hearing to address the lien. (Dugan Decl. ¶ 8). As is evident from the Congressional Report discussed above, while the IRS is encouraged to combine both the lien and levy hearings into one, "the taxpayer is obligated to raise all relevant issues at such a hearing." H.R. Conf. Rep. No. 105–599, at 266 (1998). The record does not indicate, aside from the request for a hearing concerning the lien, that Reid attempted to discuss the lien or was denied this opportunity by the IRS at the July 30 hearing. Therefore, because Reid did not timely request a hearing for the tax lien, the July 30 hearing was an equivalent hearing with respect to the lien, and this court lacks subject matter jurisdiction to review it.

## II. The July 30 Collection Due Process Hearing

■ According to the Internal Revenue Manual ("IRM"), installment agreements cannot be approved for taxpayers that are not currently complying with deposit and filing requirements. *See IRM* 5.14.1.4.1(5); *IRM* 5.7.8.3(5). As a result, the IRS argues that any collection alternative proposed by Reid must have been rejected once Officer Dugan learned that Reid was not in compliance with its deposit and filing requirements on July 31. (Def.'s Mem. Supp. Summ. J. at 4). The IRS is correct that under the guidance of the IRM, settlement officers should not grant collection alternatives to taxpayers that are not meeting current tax obligations, however, "the IRS Service Manual is not binding authority on the Court or the IRS." *Dudley's Commercial and Industrial Coating, Inc.* 292 F.Supp.2d at 987. The provisions of the IRM "only govern the internal affairs of the Internal Revenue Service. They do not have the force and effect of law." *United States v. McKee* 192 F.3d 535, 540 (6th Cir.1999) (quoting *Valen Mfg. Co. v. United States* 90 F.3d 1190, 1194 (6th Cir.1996)). *See also Oxford Capital Corp. v. United States* 211 F.3d 280, 285 n. 3 (5th Cir.2000); *Groder v. United States* 816 F.2d 139, 142 (4th Cir.1987) (citing *United States v. Caceres* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979)). Consequently, although the IRM offers Settlement Officers valuable guidance, Officer Dugan was not required by law to reject any collection alternative offered by Reid simply because Reid was not in deposit and filing compliance. Nevertheless, Officer Dugan did have "the discretion to accept or reject any proposed installment agreement," (D.'s Reply to Pl.'s Mem. Opp'n Summ. J at 5 (quoting 26 C.F.R. § 301.6159–1(b))), and compliance with current filing deadlines is not on its face an unreasonable requirement.

Even when the facts are examined in the light most favorable to Reid, as is required on a motion for summary judgment, the

record indicates Officer Dugan did not abuse her discretion by denying Reid's request for a collection alternative or a continuation of the July 30 CDP hearing. The record indicates that at the hearing on July 30, Reid proposed a collection alternative and Officer Dugan explained to Reid the importance of complying with deposit and filing requirements in order for the IRS to accept Reid's proposal. (Reid Aff. ¶ 5; Pl.'s Ex. D). When the hearing concluded on July 30,[1] Reid believed the hearing would be continued at a later date following the submission of additional materials. (Reid Aff. ¶¶ 6–8). Reid submitted the additional materials that had been requested by Officer Dugan, who took them into consideration. (Reid Aff. ¶ 10; Pl.'s Ex. B). While considering Reid's proposal, however, it became apparent to Officer Dugan that Reid was not in compliance with its deposit and filing requirements, including tax payments due on July 31, 2003. (Dugan Decl. ¶¶ 11–14; Pl.'s Ex. D). As a result, Officer Dugan rejected Reid's proposal. (Dugan Decl. ¶ 15; Def.'s Exs. 106–107). In fact, as of May 2004, Reid was still not in compliance. (Dugan Decl. ¶ 18). Officer Dugan fully explained the basis of her decision in the Appeals Case Memorandum, which stated "since the taxpayer is not in deposit compliance, no collection alternatives can be considered at this time," (Def.'s Ex. 106), and the Decision Letter, which stated that Reid "remain[s] in non-compliance with filing and deposit requirements, so no alternatives to collection can be considered at this time." (Def.'s Ex. 107). Based on the record before this court, such a rejection was appropriate under the guidance of the IRM and within Officer Dugan's discretion as a Settlement Officer.

 Finally, Reid argues that it was an abuse of discretion for the settlement officer not to come to Reid's place of business to conduct the hearing, or at least to document why the hearing was not held at the taxpayer's place of business. In support of that argument, Reid relies on *IRM* 5.7.8.3(1), which provides that Settlement Officers should "[n]ormally arrange to meet the taxpayer and his/her representative at the place of business." Reid's argument is without merit because, as noted earlier, the IRM is merely intended to provide "for the agency's own internal administration," *McKee* 192 F.3d at 540, "thus a violation of these procedures does not establish a cause of action for the taxpayer." *Oxford Capital Corp. v. United States* 211 F.3d at 285 n. 3. Nothing in 26 U.S.C. §§ 6330 or 6320 requires a settlement officer to conduct the hearing at the taxpayer's place of business, and failing to do so does not amount to an abuse of discretion under the circumstances of this case.

---

1. It should be noted that Reid is only entitled to one CDP hearing under 26 U.S.C. § 6330(b)(2).